Argued January 3, decided January 16, 1912.

# STATE v. MEISTER.

[120 Pac. 406.]

SEDUCTION—ELEMENTS OF OFFENSE—MARRIAGE.

1. Under Section 2076, L. O. L., providing that any person who under a promise of marriage shall seduce and have illicit connection with any unmarried female of previous chaste character, shall be punished, etc., evidence that the female was not married when the alleged offense was committed is essential.

SEDUCTION—CORROBORATION—FACT OF MARRIAGE—NECESSITY.

2. Section 1542, L. O. L., providing that upon trial for having seduced and had illicit connection with an unmarried female, accused cannot be convicted on prosecutrix's testimony unless she is corroborated by some other evidence tending to connect accused with the commission of the crime, does not require corroboration of prosecutrix's evidence as to her being unmarried, though that fact is under Section 2076 an essential element of the offense.

CRIMINAL LAW—TRIAL—RECEPTION OF EVIDENCE.

3. Though the State, when it rested, had not shown that prosecutrix was unmarried, at the time of the seduction, the court could, after denying accused's motion on that ground for a verdict, permit the State to supply the evidence of nonmarriage.

SEDUCTION—PROSECUTION—ADMISSION OF EVIDENCE.

4. In seduction prosecutions, correspondence between prosecutrix and accused, whether before or after the intercourse, is admissible as a circumstance to corroborate prosecutrix's testimony as to a promise of marriage and to explain their relations, if relevant, so that a letter from accused to prosecutrix stating that he was willing to "do the right thing," but was broke, and asking her to send him $50, and meet him at a certain place, and that they would be quietly married there, was admissible in evidence to show a promise to marry.

CRIMINAL LAW—TRIAL—MISCONDUCT OF PROSECUTOR.

5. The court properly censured the prosecuting attorney in a seduction case for holding up prosecutrix's child in the courtroom and asking her whether it was hers.

SEDUCTION—ADMISSION OF EVIDENCE—CORROBORATION.

6. Prosecutrix's admission in a seduction case that a child was born to her was corroborative evidence that she had had illicit intercourse and was proper.

CRIMINAL LAW—MISCONDUCT OF COUNSEL—CURE BY ACTION OF COURT.

7. In a seduction case, prosecutrix was asked, "Is this your child?" the prosecuting attorney at the same time walking back among the spectators and taking a child in his arms, when the court remarked, upon accused's objection, "I don't want any demonstration of that sort

here, and I won't have it." Defendant's attorney remarked that such conduct was reversible error when the court said: "No, it is not; it is not an exhibit, and he has not offered to make it an exhibit," and further stated that the attorney had a perfect right to ask prosecutrix if it was her child, but that the child could not be exhibited to the jury. *Held* that, in view of the court's disapproval of holding the child up, it would be presumed that no prejudice resulted therefrom.

CRIMINAL LAW—APPEAL—EXCEPTIONS.

8. After the State had rested in a seduction case, accused moved for a directed verdict on the ground that no testimony had been offered tending to prove that prosecutrix was virtuous on the date of the alleged intercourse, when the court remarked, "Well, she says she was a chaste woman, and I think I will deny your motion and allow you an exception," when an exception was noted. *Held,* that the exception was to the denial of the motion for a directed verdict, and not to the impropriety of the court's remark, so that a contention that it was improper cannot be considered on appeal.

CRIMINAL LAW—TRIAL—COMMENT ON EVIDENCE.

9. In ruling upon accused's motion in a seduction case, made after the State had rested, for a directed verdict on the ground that no evidence was offered to show that prosecutrix was virtuous on the date of the alleged intercourse, the court remarked: "Well, she says she was a chaste woman, and I think I will deny your motion and allow you an exception." *Held,* that the remark of the court in denying the motion was not improper.

CRIMINAL LAW—TRIAL—MISCONDUCT OF COURT.

10. Counsel in a seduction prosecution became involved in an argument as to the purport of certain testimony, when accused's counsel desired to have the stenographer read such testimony, saying: "Well, we are entitled to it if the court please." The Court: "Of course you are entitled to the testimony from the witness on the stand, but you are not entitled to have this testimony read at this time, but you may have an exception. * * I am not going to have this testimony read over now." Defendant's Counsel: "Well, we will take an exception." The Court: "Yes, put down ten of them"—to which latter language defendant also excepted. *Held* that, whether the court's statement that counsel could have ten exceptions was prompted by impatience or pleasantry, it was directed to counsel, and not to accused, so that the latter was not injured thereby.

SEDUCTION—PROMISE OF MARRIAGE.

11. An unconditional promise of marriage and its acceptance and reliance upon the resulting engagement, whereby prosecutrix is induced by persuasion to consent to sexual intercourse are essential to convict of seduction, and in determining whether the intercourse was induced by a promise of marriage or by passion, with the marriage promise merely as a cloak, the court will not determine on which side the preponderance of desire for illicit sexual indulgence lay.

SEDUCTION—PROSECUTION—"EVIDENCE TENDING TO CONNECT ACCUSED WITH THE CRIME."

12. An admission by accused that he had illicit intercourse with prosecutrix was sufficient as evidence tending to connect him with the commission of the crime, within Section 1542, L. O. L., prohibiting conviction unless prosecutrix's testimony is corroborated by some other evidence tending to connect accused with the commission of the crime.

SEDUCTION—PROSECUTION—CHASTE CHARACTER—BURDEN OF PROOF.

13. Under Section 2076, L. O. L., making one punishable, who, under a promise of marriage, seduces and has illicit intercourse with any unmarried female of previously chaste character, the burden is upon the State to prove prosecutrix's chastity at the time of the alleged intercourse.

SEDUCTION—CORROBORATION.

14. Prosecutrix's testimony in a seduction case that she was chaste at the time of the alleged act of intercourse need not be corroborated.

SEDUCTION—PROSECUTION—ADMISSION OF EVIDENCE.

15. Evidence of specific acts of lewdness by prosecutrix is admissible to show that she was of unchaste character, testimony of her general reputation as to chastity being admissible to impeach or corroborate evidence of particular acts of unchastity.

From Multnomah: HENRY E. MCGINN, Judge.

The defendant, Harry Meister, was convicted of the crime of seduction, and he appeals.          AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. J. E. Magers* and *Mr. John C. McCue.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Geo. J. Cameron,* District Attorney, *Mr. Joseph H. Page,* Deputy District Attorney, and *Mr. M. J. MacMahon,* special prosecutor, with an oral argument by *Mr. Page.*

MR. JUSTICE MOORE delivered the opinion of the court.

The defendant, Harry Meister, was convicted of the crime of seducing, under promise of marriage, and of having illicit intercourse with, Emma Olson, an alleged unmarried female of previous chaste character, the indictment charging that the offense was committed in Multnomah County, March 20, 1910, and he appeals from the judgment which followed. His counsel maintain that an

error was committed in denying their request for a directed verdict of acquittal, based on the ground that, when the State had introduced its evidence and rested, no testimony had been offered tending to show that on March 20, 1910, Emma Olson was unmarried.

1. The statute upon which this action is predicated is, as far as material herein, as follows:

"If any person, under promise of marriage, shall seduce and have illicit connection with any unmarried female of previous chaste character, such person, upon conviction thereof, shall be punished," etc.   Section 2076, L. O. L.

It will thus be seen that an unmarried woman is the only person protected by the enactment, and evidence of her civil status at the time of the alleged commission of the offense is one of the essential elements to the maintenance of a criminal action against the man having illicit intercourse with her.   The certificate of the trial judge, appended to the bill of exceptions herein, contains a memorandum as follows:

"Considerable of the direct testimony of Emma Olson was given before the stenographer was called in."

From this state of the transcript it is impossible to assert with certainty that when the motion for a verdict for the defendant was interposed no testimony had been offered tending to substantiate the fact mentioned.   In rebuttal, however, in answer to the question asked by the court, "Were you ever married?" the prosecutrix replied: "I never was; no, sir."   Assuming, without deciding, that this is the only testimony given on the subject to which it relates, and admitting that the answer quoted was not confirmed by any other evidence, the questions to be considered are whether or not after the denial of a motion for a verdict of not guilty, because of the lack of material evidence, the deficiency can be supplied by rebuttal testi-

mony given on behalf of the State, over objection and exception, and, if so, is the evidence thus received, respecting the female's unmarried state, when uncorroborated, alone adequate to sustain a charge of this kind?

2. The legal principles thus involved will be examined in their inverse order. The degree of proof required in a case of this kind is thus described:

"Upon trial * * for having seduced and had illicit connection with an unmarried female, the defendant cannot be convicted upon the testimony of the female injured, unless she is corroborated by some other evidence tending to connect the defendant with the commission of the crime." Section 1542, L. O. L.

The statute first quoted (Section 2076, L. O. L.), indicates that in order to convict a defendant for a perpetration of the offense denounced, proof must be adduced tending to establish the following constitutent ingredients of the crime, to wit: (1) That under a promise of marriage (2) he seduced and had illicit connection (3) with an unmarried female (4) of previous chaste character. These several elements compose the particular circumstances involved in the commission of the crime. The manner of accomplishing the man's purpose, which may be designated as the means employed, is his pledge to assume the nuptial state with the woman, who, relying on the promise, yields to his solicitations to their unlawful coition. These two acts on his part, viz., the promise of marriage and the illicit intercourse constitute the gravamen of the offense.

In construing a statute of New York which prescribed punishment for the crime of seduction under promise of marriage and provided that "no conviction shall be had on the testimony of the female seduced, unsupported by other evidence," it was held that confirmatory testimony was not required to sustain all the elements of the offense, but only as to two of the ingredients specified in the act, viz.,

the promise of marriage and the carnal connection: *Kenyon* v. *People,* 26 N. Y. 203 (84 Am. Dec. 177) ; *Boyce* v. *People,* 55 N. Y. 644; *Armstrong* v. *People,* 70 N. Y. 38.

A statute of Oklahoma on this subject, declaring that, "the defendant cannot be convicted upon the testimony of the person injured, unless she is corroborated by other evidence tending to connect the defendant with the commission of the offense," was interpreted to mean that the female's testimony was required to be supported by other evidence as to the promise of marriage and to the illicit intercourse and not as to her being unmarried or of previous chaste character at the time of the commission of the crime. *Harvey* v. *Territory,* 11 Okl. 156 (65 Pac. 837). These decisions are based on the principle that a man accused of the commission of such a crime is charged with doing two things, to wit, promising to marry the woman whom he seduces, and having illicit intercourse with her. The other elements specified in the statute, viz., an unmarried female and a woman of previous chaste character, are matters of description, designating the qualification and attribute which the female must possess at the time of the commission of the offense in order to invoke the protection which the statute affords to women of that class. 25 Am. & Eng. Ency. Law (2 ed.) 245; 11 Ency. Ev. 697. We conclude that the uncorroborated testimony of Emma Olson, that she had never been married, was sufficient proof of that fact.

3. A failure to prove that on March 20, 1910, the prosecutrix was unmarried would probably have necessitated the granting of a new trial if, after a judgment of conviction, a motion based on that ground had been interposed. In the case supposed, an allowance of the motion, at the time indicated, would have removed the bar of jeopardy and authorized a new trial as if none had ever been had. After the State had introduced its evidence in

chief and rested, without offering proof that Emma Olson was unmarried at the time of the alleged commission of the crime, the granting of the motion then interposed would have been an acquittal of the defendant, and he could not have been tried again for the same offense. Courts are unquestionably anxious so to administer the law at the trial of a cause as to suppress crime and to protect innocence. As the directing of a jury to find a defendant in a criminal action not guilty because the State had inadvertently omitted to prove some essential fact, when attention is called to the defect before the cause is finally submitted, would have amounted to a miscarriage of justice, we conclude that a missing link in the chain of evidence may be furnished in the manner complained of.

The discretion of the court was not abused in permitting the prosecutrix to state upon oath that she had never been married, after having denied the motion to instruct the jury to find for the defendant, assuming that such proof had not been offered when the request for the instruction was made.

4. It is maintained that an error was committed in receiving in evidence, over objection and exception, letters written by the defendant to the prosecutrix after March 20, 1910, in which he signified his willingness to marry her. One of his letters, written January 3, 1911, from Los Angeles, California, and directed to her at Sellwood, Oregon, is as follows:

"Dear Emma: Received your most pityful letter this morning. You know I am perfectly willing to do the right thing but am unable to come to Klamath Falls, as I am broke, all in, down and out, have been living on my nerve for a week. Now, Emma, if you can send me fifty dollars I will come immediately. May be you think this is too much to ask for but I have all my clothes, watch and other junk in the pawn shop. The best thing that you can do is to leave for Klamath Falls right away so

nobody will find it out.   Be sure and send the money by
telegraph so that I can get it here as quick as possible; it
takes six days for a letter to come from Portland to
Los Angeles and back.   And as soon as I arrive we shall
get quietly married.   Please excuse my writing for I am
excited and nervous.   Will close with love and best wishes.

"Your only dear friend,

"Harry."

It appears from the transcript that in response to this
letter the genuineness of which is admitted, Emma Olson
sent $5, which was all the money she had, to the
defendant, and went to Klamath Falls to meet him.   He
did not go there, however, but came to Portland, and on
her return refused to marry her.   In prosecutions for
seduction correspondence between the defendant and the
prosecutrix, occurring before or after the commission of
the illicit intercourse, is admissible as a circumstance
tending to corroborate the female's testimony, to explain
their relations to each other, and, with proof of other
incidents, to indicate a promise of marriage.   11 Enc. Ev.
698; *Bracken* v. *State,* 111 Ala. 68 (20 South. 636: 56 Am.
St. Rep. 23) ; *State* v. *Bell,* 79 Iowa, 117 (44 N. W. 244) ;
*Harvey* v. *Territory,* 11 Okl. 156 (65 Pac. 837). The
letters were admissible for the purpose offered and in
receiving them in evidence no error was committed.

5. Emma Olson on her direct examination was asked:
"Is this your child?" ·

(The counsel who was assisting in prosecuting the
action then walked back among the spectators and took
a child in his arms).   Defendant's attorney, having
objected to such conduct, the court remarked:   "I don't
want any demonstration of that sort here, and I won't
have it!"

Defendant's attorney, again alluding to such action on
the part of the prosecution, said:   "Counsel knows it is
reversible error."

The Court:   "No, it is not; it is not an exhibit, and he
has not offered to make it an exhibit."

Defendant's attorney observed: "I know, if the court please, but he is holding the child up in his arms where the jury can see it; exhibiting it to them and asking her if that is her child. We certainly object to any such procedure in this case."

The Court: "That is all proper. He has a perfect right to ask her if that is her child, but the child will not be exhibited to the jury."

Defendant's Attorney: "He has exhibited the child to the jury."

The Assistant District Attorney: "I have not exhibited the child to the jury. I merely asked her if this is her child."

The Court: "You may proceed, exception allowed."

"Q. You say this is your child?"

"A. Yes, sir."

The demonstration to which the court alluded evidently referred to the action of the assistant attorney in taking the child in his arms. As we view the bill of exceptions the court very properly censured such attorney for his conduct.

6. The admission by the mother that the child was born to her, an unmarried female, was corroborative evidence that she had had illicit intercourse with some man, and for that reason the question was proper. 25 Am. & Eng. Ency. Law (2 ed.) 245. No attempt was made to show any physical similarity between the child and the defendant from which it might be inferred that he was its father.

7. Conceding it to be improper to take up the babe when the question was asked the mother if that was her child, the court tried to correct any mistake that might have been made by the "demonstration," which manifestation was disproved, and having done so it must be taken for granted that no prejudice resulted.

8. The State having introduced its evidence and rested, defendant's counsel moved for a directed verdict on the ground, *inter alia,* that no testimony had been offered tending to prove that on March 20, 1910, Emma Olson was virtuous. The Court thereupon remarked:

"Well, she says she was a chaste woman, and I think I will deny your motion and allow you an exception."

The exception thus noted was undoubtedly granted to the denial of the motion, and no exception was taken to the observation of the court last quoted. The contention that such remark was erroneous cannot be considered.

9. It is not deemed out of place to assert, however, that the motion referred to presented the question whether or not, any testimony had been received on the subject mentioned, in referring to which the court very properly used the language now complained of, but to which no exception was then reserved.

10. In the argument of the cause to the jury a dispute arose between counsel for the respective parties regarding the purport of some of the testimony received, whereupon defendant's counsel desired to have the stenographer read his notes so far as they related to the matter in controversy, saying:

"Well, we are entitled to it, if the court please."

The Court replied: "Of course you are entitled to the testimony from the witness on the stand, but you are not entitled to have this testimony read at this time. You may have an exception. I am not going to have this testimony read over now."

Defendant's Counsel: "Well, we will take an exception, if the court please."

The Court: "Yes, ten of them; put down ten of them."

Defendant's Counsel: "And we also desire to except to the language of the court."

The Court: "Yes, you may take an exception to that, too."

It is argued that the remark, "Yes, ten of them; put down ten of them," was a flippant and arbitrary observation well calculated to prejudice the defendant in the minds of the jurors who were governed by the comment in determining the issue, depending as it was on controverted testimony, and that the expression used by the court was unfavorable to their client.

Courts are composed of judges who are human, and they are often swayed by the frailties which afflict other persons. When, after declaring that defendant's counsel was not entitled to have the testimony read over during the argument, the court said to him, "You may have an exception," and this order was taken down by the stenographer, it was unnecessary to make any other notation in order to reserve the question for consideration on appeal. Instead of relying on the allowance thus made, defendant's counsel insisted upon taking another exception, whereupon the court remarked: "Yes, ten of them; put down ten of them." Whether this observation was prompted by impatience or induced by pleasantry cannot be determined from an inspection of the transcript, but whatever motive impelled the use of the language employed, it was unquestionably directed to the counsel and not to his client who, in our opinion, was not biased thereby.

It is maintained that the testimony offered does not show a promise of marriage, and such being the case an error was committed in refusing to instruct the jury to return a verdict for the defendant when the cause was finally submitted. Whether or not on her direct examination the prosecutrix gave any testimony on this subject is impossible certainly to state from an examination of the transcript of the evidence which is attached to the bill of exceptions, for it will be remembered that the services of the official stenographer were not demanded until Emma Olson had given part of her testimony in

chief.   On cross-examination she stated that about
January 1, 1909, she became acquainted with the defend-
ant, who, in March, of that year, commenced visiting
her at her home about twice a week, and a few months
thereafter she began going out with him alone; that on
March 20, 1910, after dark in the evening she accom-
panied him from her home to the Golf Links station at
Sellwood, and in answer to the question, "Well, what did
he say?" she replied, "Why, when he asked me I simply
told him 'No,' and I told him 'I was afraid,' and he said,
'No use being afraid.'

"He said, 'We are going to be married anyway,' and I
thought it was all right then."

She further testified that thereafter she frequently had
illicit connection with the defendant until June, 1910,
from which time she saw him about twice each week until
December of that year, when he went to Los Angeles,
Cal., and that on April 20, 1911, she gave birth to a
female child.

Alma Peterson testified that the defendant visited
Emma Olson quite often prior to March 20, 1910, and at
such calls upon the prosecutrix she frequently heard them
speaking to each other of their intermarriage.

The defendant testified that he began going with Emma
Olson about November, 1909.   He admits that he had
sexual intercourse with her at the Golf Links, but denies
that he ever promised to marry her until long after their
unlawful connection ceased, when he wrote her that he
was perfectly willing to do the right thing by her.

It is argued by defendant's counsel that if it were
admitted that a promise of marriage had been made and
accepted at the time stated, which they deny, the testi-
mony quoted and referred to on this branch of the case
shows that the prosecutrix was a willing participant in
her own degradation, and that the desire for sexual inter-
course and the opportunity for the gratification of her

passions prompted the indulgence, and that there was no reluctant yielding of her consent induced by a promise of marriage upon which she relied. The legal principle invoked finds expression in the case of *Bradshaw* v. *Jones,* 103 Tenn. 331 (52 S. W. 1072: 76 Am. St. Rep. 655), which was a civil action wherein it was held that in order to constitute seduction the consent of the female to the act of intercourse must be induced by some act, representation, or statement of the man, in the absence of which there would be no willingness on the part of the woman; but that it was not seduction where the willingness arises out of sexual desire or curiosity of the female, so that she only needed an opportunity for the commission of the act. In that case there was no promise of marriage, nor could there have been, for the defendant at the time of the commission of the act was married, of which fact the female had knowledge, notwithstanding which, the judgment which she secured for the damages sustained was upheld on appeal.

In *People* v. *Clark,* 33 Mich. 112, it was held in a criminal action that where a woman willingly submits to sexual intercourse in order to indulge a criminal desire, the fact that a promise of marriage is made "as a matter of form only," the engagement was not enough of itself to characterize the action as seduction, but that the nature of the promise and the previous character of the woman for chastity should be considered. The interpretation of the law thus given was fully justified by the statute there considered.

In *State* v. *Reeves,* 97 Mo. 668, 677 (10 S. W. 841: 845 10 Am. St. Rep. 349), in construing a statute which made it a crime for any person under promise of marriage to seduce and debauch any unmarried female of good repute, it was held that an instruction which omitted the word "seduce," but informed the jury that if the defend-

ant promised the prosecutrix that he would marry her if she would permit him to have sexual intercourse with her, and that if she did so on the faith of the promise, he was guilty of seduction, was erroneous in that such part of the charge to the jury ignored one of the necessary elements of the offense and permitted a conviction upon proof alone, that the female was debauched under promise of marriage. It must be admitted that the instruction complained of was faulty, necessitating a reversal of the judgment. In the opinion in that case, however, Mr. Justice SHERWOOD observes:

"No one can, with any degree of plausibility, contend that a virtuous female could be seduced without any of those arts, wiles and blandishments, so necessary to win the hearts of the weaker sex. To say that such a one was seduced by simply a blunt offer of wedlock *in futuro,* in exchange for sexual favors *in praesenti,* is an announcement that smacks too much of bargain and barter, and not enough of betrayal. This is hire, or salary, not seduction."

Mr. Justice BRACE assented to the language thus employed. Mr. Chief Justice RAY and Mr. Justice BARCLAY concurred in the result only, while Mr. Justice BLAKE dissented. It will thus be seen that the part of the opinion quoted lacks the sanction of a majority of the court. In referring to the language of Mr. Justice SHERWOOD, last quoted, it is said in *State* v. *Eckler,* 106 Mo. 585, 588 (17 S. W. 814: 27 Am. St. Rep. 372) :

"We do not understand that the learned judge intended to lay down the doctrine that if a virtuous girl should be seduced by reason of a promise of marriage no crime would be committed. His language, though vigorous, taken with its context, will not bear the construction defendant's counsel gives it. Nor will the statute bear such construction."

In *State* v. *Horton,* 100 N. C. 443, 449 (6 S.E. 238, 241: 6 Am. St. Rep. 613), it was held that if under a promise of marriage a female consented to illicit intercourse such acquiescence was no bar to the maintenance of a criminal action, the court saying:

"Consent too, if seduction be proved, is no defense, nor that natural unwillingness a virtuous woman feels against such self-abasement of which he speaks," referring to the defendant's promise to make the prosecutrix his wife and his characterization of his conduct as a piece of "devilment," "when, in fact, it at last yields to the importunity of one expected soon to be a husband."

The cases to which attention has been called were cited by defendant's counsel in support of the doctrine asserted, but not one of the decisions goes to the extent claimed for it, except possibly in *State* v. *Reeves,* 97 Mo. 668 (10 S. W. 841: 10 Am. St. Rep. 349), and the opinion in that case had the concurrence of only two of the five justices then composing the court.

11. An unconditional promise of marriage made by a man to a previously chaste woman, and her acceptance of the offer in reliance upon the engagement whereby she is induced by his persuasion to yield consent to illicit intercourse with him, are essential facts to be established in a criminal action against him for his betrayal of her confidence, when he refuses to consummate the nuptials. Courts will not determine the preponderance of desires for sexual indulgence entertained by either party to the illicit connection, for the woman, who under promise of marriage, yields her chastity to the man's solicitations for a momentary gratification of their passions takes upon herself the more onerous burden of shame, disgrace, and social ostracism, in case of discovery, than the man, and for that reason she is entitled at least to equal protection.

The testimony shows that March 20, 1910, the day the alleged crime was committed, was the seventeenth

anniversary of the birth of the prosecuting witness, and at that time the defendant was about two months her senior in years. From the age and situation of the parties and from a careful consideration of all the testimony in the transcript, that contains but little of the direct examination of Emma Olson, it cannot be said, as a matter of law, that there was no evidence received of a valid promise of marriage duly corroborated by the testimony of Alma Peterson, and for that reason no error was committed in refusing to instruct the jury as required with respect to this part of the case.

12. It will be remembered that the defendant, on the witness stand, admitted that he had had illicit intercourse with the prosecutrix, and the evidence in this respect was sufficient as tending to connect him with the commission of the crime. Section 1542, L. O. L. No error was committed in refusing to instruct the jury to acquit the defendant for lack of corroborating testimony in the two essential particulars to constitute a commission of the offense.

13. As woman's virtue is a canon of almost universal conduct, and unchastity of that sex the rare exception, this well-recognized generality of female purity gives rise in some states to the doctrine that, in the absence of any other evidence, the presumption will be indulged that the woman seduced under promise of marriage was chaste at the time of the commission of the offense, thereby imposing upon the defendant the burden of disproving the deduction which the law expressly directs to be made from particular facts. 35 Cyc. 1344. Our statute makes previous chaste character of the female who is seduced under promise of marriage an element conducting to her protection when she is betrayed after yielding her virtue at the solicitation of the man whom she has every reason to believe would become her husband. The enactment referred to requires the State to assume the burden of

proving her chastity at the time of her illicit intercourse, as was done in the case at bar. The transcript does not show that Emma Olson gave any testimony on direct examination in chief respecting her chastity at the time of the commission of the offense. It must be assumed, however, that she was interrogated in relation thereto and gave affirmative answers on that subject, for on cross-examination defendant's counsel, referring to that inquiry, asked her the following question:

"You were a pure and virtuous girl at that time?"

She replied: "I was before I met Harry Meister."

14. No corroboration of such testimony was required, as hereinbefore indicated, and no error was committed in refusing to instruct the jury to return a verdict of not guilty in consequence of any failure in this respect.

Two young men, as defendant's witnesses, severally stated that he had had illicit connection with Emma Olson before March 20, 1910. Another young man also testified that prior to that date, with the consent of the prosecutrix, he attempted to have sexual intercourse with her, but after two or three endeavors to accomplish their unlawful purpose his efforts proved unavailing. Based on these incriminating admissions, 11 other witnesses, appearing for the defendant, testified that the general reputation of Emma Olson for chastity, prior to March 20, 1910, in the community where she lived was bad. No testimony was offered by the State in rebuttal on this subject.

15. In *State* v. *Eggleston*, 45 Or. 346, 351 (77 Pac. 738, 740), in a prosecution for adultery, it is said:

"So, too, in cases of seduction, evidence of the reputation of the female for lewdness is admissible as a circumstance tending to show that the act complained of may not have been the cause of her going astray."

The language thus quoted, unless explained or qualified, might be misleading, for it is the character of the female

seduced that the statute makes a shield for her protection and not her general reputation. Evidence of specific acts of lewdness is admissible to show that the woman was in fact unchaste. *Kenyon* v. *People*, 26 N. Y. 203 (84 Am. Dec. 177). When such evidence has been received, testimony in relation to the general reputation of the female as to her chastity is admissible to impeach or corroborate evidence regarding particular acts of unchastity. Bishop, Stat. Crimes (3 ed.) § 650; *State* v. *Clarke*, 9 Or. 466; *State* v. *Prizer*, 49 Iowa, 531 (31 Am. Rep. 155). The course indicated was pursued at the trial of this cause, but evidently the jury did not believe the testimony of the young men respecting their acts of immorality, fortified as it was by evidence of the general reputation of Emma Olson for unchastity, to which no credence was given.

Other exceptions are assigned, but deeming them unimportant the judgment is affirmed.        AFFIRMED.