STATE, Respondent, v. HOLTER, Appellant.

(142 N. W. 657.)

1. **Criminal Law—Seduction—Previous Chaste Character—Presumptions—Instructions.**

An instruction on trial for seduction, that the law presumes a woman to be chaste until the contrary is shown, but if there is a reasonable doubt of prosecutrix's chastity accused is entitled to the benefit of the doubt, is erroneous; since this presumption has no place and cannot be indulged in in a prosecution for seduction, and under the statute the previous chaste character of a prosecutrix is an essential element of the offense, and the burden of establishing that fact is on the state.

2. **Statutes—Construction—Adoption of Foreign Statute Judicially Construed.**

The adoption by the territorial legislature of a statute of a state judicially construed by the Supreme Court thereof, was an adoption of such judicial construction thereof.

3. **Seduction—"Previous Chaste Character"—Statutes.**

The clause "previous chaste character" in the statute, punishing the seduction of an unmarried female of such character, means merely purity of body, not purity of mind or heart.

4. **Elements of Offense—Evidence.**

Where a criminal act consists of separate elements, as in seduction, the existence of all necessary elements must be alleged and proved to support a conviction.

5. **Criminal Law—Instruction on Presumption of Fact—Harmless Error—Effect of Evidence on Instruction.**

The error in an instruction on a trial for seduction, that the

law presumes a woman to be of chaste character until the contrary is shown, is not rendered harmless merely because there is evidence of previous chaste character sufficient to warrant the jury, if believing the evidence, to find her to be of such character.

6. **Seduction—Evidence as to Sexual Intercourse—Rebuttal—Competency.**

Where prosecutrix testified that accused visited her, had taken her out riding, to entertainments, and otherwise kept company with her, and that the act of intercourse complained of occurred on June 18, July 29, and August 12 and 23rd, and she denied, on cross-examination, that she had, during that period of time, received attentions from a third person, or that she had on August 13 asked him to take her to a dance on the succeeding Saturday night, **held**, the refusal to permit accused to show that the third person had visited prosecutrix at her father's house during the period, had taken her to entertainments and had been out with her alone, and had asked him to take her to a dance as testified to by prosecutrix, was prejudicial error.

7. **Corroborating Evidence—Instructions.**

An instruction that the facts that prosecutrix was an unmarried female of previous chaste character, and that there was intercourse under promise of marriage, were facts which might be found from her testimony alone, if the jury believed beyond a reasonable doubt, that to which she had testified, but that the jury could not find that accused was the guilty party unless there is other evidence tending to prove that fact, and that evidence that accused and prosecutrix kept company with each other, acted as lovers usually do, and other like circumstances, if any, were sufficient to constitute corroborating evidence to connect accused with the crime, was erroneous for failing to sufficiently explain what acts and conduct of the parties could be construed as corroborative of prosecutrix's testimony; the corroborating evidence should show that the conduct of each toward the other was different from that of either toward any other party.

Smith, J., dissenting.

8. **Evidence—Instructions—"Sufficient."**

An instruction that evidence that accused and prosecutrix acted as lovers usually do, and other like circumstances, if any, was sufficient to constitute corroborating evidence to connect accused with the offense of seduction, was misleading, because of the use of the word "sufficient" instead of the word "competent," which latter word, had it been used, would have left the sufficiency of corroborating evidence to jury; the word

"sufficient" meaning equal to the end proposed; adequate to wants; and relating to quantity rather than to quality.

　　Smith, J., dissenting.

(Opinion filed June 3, 1913.)

On rehearing. Judgment of conviction for seduction reversed, and former opinion modified.

For former opinion, see 30 S. D. 353, 138 N. W. 953.

*Charles P. Bates, Charles H. Bartelt,* and *Perrett F. Gault,* for Appellant.

*Royal C. Johnson,* Attorney General, *M. Harry O'Brien,* Assistant Attorney General, *Ambrose B. Beck,* State's Attorney, *French & Orvis, J. E. Tipton,* and *G. M. Caster,* for Respondent.

The court did not consider, pass upon, or determine the question as to whether the trial court erred in instructing the jury as follows: "With reference to this provision of the law in regard to previous chaste character the court charges that the law presumes a woman to be of chaste character until the contrary is shown, but if there is reasonable doubt as I will hereinafter define it, of her chastity under all the evidence he will be entitled to the benefit of that doubt."

Appellant's claim that California holds that there is no presumption of previous chaste character in this class of cases is untenable. People v. Kehoe, 55 Pac. 911.

At the time of the California decisions above referred to they had no statute such as ours in regard to this peculiar class of cases.

Our court has passed upon this question in the case of State v. King, 9 S. D. 628, and we submit that our court was well within the authorities in holding as they did in this last case, and that the case ought not to be overturned as argued by appellant; that it is sufficient if the prosecuting witness is corroborated by evidence tending to connect the defendant with the offense charged in this case, and that that evidence may be such as tends to show that the defendant had illicit intercourse with some one at or about the time charged in the indictment, or that there is other corroborative evidence tending to show that the defendant was with the complaining witness at that time, and had opportunity to commit the offense, and that he had been going with her more or less frequently for some years prior thereto, or any or all these, and that there is no evidence showing, or tending to show that any other

man had been going with her, or was in any way familiar with her at or about this time.   Tedford v. U. S., 104 S. W. 608, Arkansas; State v. Riggs, 25 S. D. 275, dissenting opinion.

POLLEY, J.  This case is before the court on rehearing. The former opinion is reported in 30 S. D. 353, 138 N. W. 953, where a statement of facts will be found.  In his petition for a rehearing, the appellant contends that a number of his assignments that were argued in his brief were either passed over and not considered by the court, or were not given the consideration to which they were entitled.   These assignments are errors that are alleged to have been committed by the court, both in its instructions to the jury and in refusing to admit certain testimony offered on behalf of the defendant at the trial.   On a re-examination of the record, the court is of the opinion that the appellant is right in his contention, and we shall give our attention to a review of the alleged errors.

[1]   The first matter complained of by the appellant is an instruction by the court, which is as follows: "With reference to this provision of the law in regard to previous chaste character, the court charges that the law presumes a woman to be of chaste character until the contrary is shown; but, if there is a reasonable doubt, as I will hereinafter define it, of her chastity, under all of the evidence, he would be entitled to the benefit of that doubt." The question presented by this assignment is one relating to the material rights of the defendant.   The question of law laid down by the court by the instruction, to wit, "The law presumes a woman to be of chaste character until the contrary is shown," assumes the existence of one of the material elements of the offense and dispenses with any proof thereof on the part of the prosecution.   But it even goes further than that, for, by using the words, "but if there is a reasonable doubt, as I shall hereinafter define it, of her chastity, under all of the evidence, he would be entitled to the benefit of that doubt," the court, by implication at least, cast upon the defendant the burden of proving the negative of one of the material allegations in the information, or, to that extent it required him to prove his innocence; for, if the prosecutrix is to be presumed to be of chaste character until the contrary is shown, then that is an existing fact, and is free from any doubt whatever.   The prosecution is not required to furnish any proof of that allegation, and therefore

any doubt to be raised thereon must be the result of proof furnish-
ed by the defendant.  This, of course, would be an invasion of de-
fendant's constitutional rights; and, after a careful consideration of
the question, we are of the opinion that the court erred in this in-
struction to the jury, and that the defendant's rights were preju-
diced thereby.

We are not unmindful of the presumption of the chastity of
every woman until the contrary is shown, and that it ought to be
recognized wherever it can legally be done.  In fact this presump-
tion of chastity and virtue of womanhood is the very foundation of
our social fabric.  Chastity is the rule, and we believe that we
might say it is the fact in the case of every woman until her chas-
tity has been lost or debauched by the false promises, cajolery, or
other deceitful wiles practiced upon her by some member of the op-
posite sex.  But, conceding all this to be true, this presumption of
chastity has no  place, and cannot be indulged in a prosecution for
seduction under our statute.  The offense is purely statutory, and
as defined by the statute it consists of four concurrent, essential
elements, the existence of each of which is necessary to constitute
the crime.  These elements are: First, under promise of marriage;
second, to have illicit connection; third, with an unmarried female;
fourth, of previous chaste character.  So far as the statute is con-
cerned, these elements are all of equal importance; each is an al-
legation of an independent fact, and it is necessary that each be al-
leged in the indictment or information.  To warrant a conviction,
the jury must be satisfied, and that beyond a reasonable doubt, of
the truth of each.  Evidence may be at hand to prove, to an ab-
solute certainty, the existence of either three of the elements of the
offense, but, without the existence of the other no conviction can
be had or sustained.  This being the case, how can it be said that
proof of either of these allegations can be dispensed with; or, if
proof of one could be dispensed with, why not of another, or two
for that matter?  If a court could hold that a woman is to be pre-
sumed to be chaste until the contrary is shown, and thereby dis-
pense with proof of her chastity, why could he not also presume
that a chaste female would not submit to illicit intercourse except
under promise of marriage, and thereby dispense with the necessity
of proving the promise to marry?  Or he might hold that a prom-
ise to marry, being a mutual agreement, implies that the parties are

capable of entering into a valid marriage; and therefore the female would be presumed to be unmarried, and thus dispense with evidence to prove that she is unmarried. Of course any of these propositions would be absurd, but one is not more absurd than the other, for the indulgence of any of these presumptions would overcome the defendant's presumption of innocence until his guilt be shown, and relieve the state of the burden of establishing his guilt by evidence on the trial, as is required by law.

There is a conflict of authority in the decisions of the various states upon the question involved in this instruction, but an examination of the cases and the statutes under which they were rendered will show that the conflict is more apparent than real. While many, if not most, of the states have statutes defining and making seduction a criminal off.ense, there is considerable difference in the wording of the various statutes, and most of the decisions are based upon the wording of the particular statute under which the prosecution is had. Our statute on this subject was originally adopted from the laws of Wisconsin. The statute of that state was adopted there in 1849, and is as follows: "Any unmarried man, who, under promise of marriage, or any married man, who shall seduce and have illicit connection with any unmarried female of previous chaste character, shall be guilty of a misdemeanor, and, upon conviction, shall be punished," etc. Rev. St. 1849, c. 139, § 6.

Very soon thereafter, in West v. State, 1 Wis. 209, the question involved in this case came squarely before the Supreme Court of that state. The indictment alleged, and there was evidence to prove, that the prosecutrix was a female of previous chaste character, but the trial court instructed the jury that the law presumes that the prosecutrix was a chaste female previous to the commission of the offense alleged against the defendant. In considering this instruction, the court said: "The previous chaste character of the female is one of the most essential elements of the offense; made so by the express words of the statute; in conformity with the suggestions of sound reason. A prostitute may be the subject of rape, but not of seduction. It is the chastity of the female which the statute is designed to protect. The preexistence of that chastity is a sine qua (quo) non to the commission of the crime. *That* is the subject of legal guardianship, pro-

vided by this section.   It is a substantive matter necessary to be averred and proved."

[2]   With this interpretation of the statute in full force, the Legislature of Dakota Territory, by section 6, of chapter 10, of the Laws of Dakota, 1862-63, adopted the Wisconsin law verbatim, and by the well recognized rule of statutory construction the adoption of this statute by the territorial Legislature was an adoption of the construction already put upon it by the Supreme Court of the state from which it was adopted.   So there can be no question about the meaning of that statute, from the time it became a part of the territorial law, nor that the construction put upon it there was adopted as much as the law itself.

Our statute remained in its original form until 1865, when the present statute (section 336, Rev. Pen. Code) was adopted from the laws of the state of New York, where it was enacted in 1848, and later on incorporated into the Penal Code, prepared by the Field Code Commission.   While the Field Code was not adopted in New York until 1882, it was adopted in its entirety by the Legislature of Dakota Territory, by an act approved January 11, 1865, and our present statute appears as section 330 of chapter 17, Session Laws of 1864-65.   It is different, in one respect, from the Wisconsin statute, but the portion of it involved in this case was not changed, and there is nothing to indicate that a new construction should be put upon the unchanged portion.

Our attention has not been called to any case decided by the Court of Appeals of New York that turned upon the precise question involved in this case.   Kenyon v. People, 26 N. Y. 204, 84 Am. Dec. 177, cited by the state, does not support the contention of respondent.   It appears from an examination of the opinion of the court in that case that the prosecutrix testified to her being of previous chaste character, and Balcom, J., in his concurring opinion said it was proper for the state to show this fact.

The case of People v. Brewer, 27 Mich. 134, cited and relied upon by the respondent, is easily distinguished from the case at bar, because of the lack of similarity between the statutes of Wisconsin and the one in force in this state and the Michigan statute. Judge Cooley, who wrote the opinion in the Michigan case, noted this difference in the following very clear language: "The case of

West v. The State, 1 Wis. 217, which seems to hold otherwise, was decided upon the phraseology of the Wisconsin statute, which was thought to make the 'previous chaste character' of the person seduced an ingredient in the offense, to be made out by proofs. Our statute is very simple, and merely provides that, 'if any man shall seduce and debauch any unmarried woman he shall be punished,'" etc.

The statutes of Oklahoma and California are both similar to ours and in both of those states the statute has been given the construction contended for by the appellant in this case. Harvey v. Territory, 11 Okl. 156, 65 Pac. 837; People v. O'Brien, 130 Cal. 1, 62 Pac. 297; People v. Wallace, 109 Cal. 611, 42 Pac. 159. And other cases to the same effect are: State v. Meister, 60 Or. 469, 120 Pac. 406; Knight v. State (Tex. Cr. App.) 144 S. W. 967; Hay v. State (Ind.) 98 N. E. 712; State v. Lockerby, 50 Minn. 363, 52 N. W. 958, 36 Am. St. Rep. 656; Zabriskie v. State, 43 N. J. Law, 640, 39 Am. Rep. 610; Oliver v. Commonwealth, 101 Pa. 215, 47 Am. Rep. 704; Commonwealth v. Lily Whittaker, 131 Mass. 224. Numerous decisions on this question will be found cited under section 2104, Whar. Cr. L. (11th Ed.), and it is unnecessary to cite them all here. The great weight of authority, and certainly the better reason, seems to support the contention of the appellant. We believe the rule announced in West v. State, supra, to be grounded in reason and to be the sounder doctrine, and comes nearer to affording a fair trial to the defendant.

[3] The clause "of previous chaste character" does not mean purity of mind, nor purity of heart, but merely purity of body; i. e., that the prosecutrix has never sustained illicit relations with any one prior to the alleged offense of the defendant. The law makes her a competent witness on that point; and, if she is a woman of previous chaste character, it inflicts no hardship upon her to say so, and if she is not, the offense has not been committed, and the defendant, of course, is not guilty. While, under the rule followed in the Iowa cases it is altogether possible that the prosecutrix may have sustained illicit relations with one, or even two or more men, other than the defendant, and still, by reason of the invariable secrecy observed in the commission of this offense the defendant might be wholly unable to prove a lack of chastity on her part.

[4] The general rule is that where a criminal act consists

of separate and distinct elements, as this does, the existence of all of the necessary elements must be alleged and proved, and this rule applies to prosecution for seduction. Whar. Cr. Ev. (9th Ed.) § 329.

It is true that the Supreme Court of Iowa under a statute similar to ours, in State v. Bauerkemper, 95 Iowa, 562, 64 N. W. 609, approved an instruction to the jury that: "Chastity was the general rule, and the want of it the exception, and the law presumes the woman to be chaste until the contrary is shown, and that, in the absence of evidence attacking the character of the prosecuting witness in that respect, the state is not called upon to offer evidence in support of her character for chastity." But the court adds this qualifying remark: "This statement of the law is not questioned, but it is argued," etc. The question involved in the case at bar was not before the court for decision in the Bauerkemper Case, and therefore the apparent rule above stated is not binding even upon that court. State v. McClintic, 73 Iowa, 663, 35 N. W. 696, is more nearly in point, though in that case the trial court instructed the jury that, "to warrant a conviction, the state must prove each and all of the allegations charged in the indictment beyond a reasonable doubt," but did not charge the jury that any presumption of chastity existed in favor of the prosecutrix. But, in State v. Drake, 128 Iowa, 539, 105 N. W. 54, the court does announce the rule that: "The burden was upon the appellant to overcome the legal presumption of her (meaning prosecutrix) prior chastity."

[5] In this case, it is contended by the prosecution that there was sufficient evidence to warrant the jury in finding the prosecutrix was of previous chaste character, and that therefore the error committed by the court, if error it was, in instructing the jury that the prosecutrix was presumed to be of previous chaste character was without prejudice to the appellant. It is true there was evidence introduced at the trial tending to prove her previous chaste character, and, in connection with the other evidence, sufficient to warrant the jury, if they believed her, in finding her to be of previous chaste character; but that does not answer the question. Under the instruction as given by the court, the jury would have been warranted in finding the prosecutrix to be of previous chaste character as a matter of fact, and still not have believed a word of

her testimony on that point. In other words, the instruction dispensed with any evidence whatever on that subject. This we do not believe the court was warranted in doing. As well might the court hold in a prosecution, say for receiving stolen property, "knowing the same to have been stolen," that if the property was shown to have been stolen and thereafter found in the possession of the defendant, he would be presumed to have received it with guilty knowledge, although he may have purchased it for full value, and without any suspicion that it had been stolen. In the one case the gravamen of the offense is the guilty knowledge; in the other it is the debauching of a previously chaste woman. The presumption goes to the very substance of the offense in both cases, and proof of the fact can no more be dispensed with in the one case than in the other.

[6] On the trial, the state, for the purpose of corroborating the testimony of the prosecutrix relative to her illicit connection with the defendant, showed by the testimony of certain witnesses that, during the period of time within which these relations were claimed to have existed, the defendant was visiting the prosecutrix at her home, taking her out riding, to entertainments; being out with her alone at night, and otherwise "keeping company" with her. On her cross-examination she was asked by defendant's counsel if, during this same period of time, she had not received similar attention from another young man in the neighborhood; if she had not been out alone with him, attended entertainments with him, and if she had not, on the 13th of August, 1911, asked him to take her to a dance on the next Saturday night, and had not also asked him to take her to another dance on the suceeding Saturday night. She was permitted to answer these questions, over the objection by the state that the testimony was irrelevant, incompetent, and immaterial, and not proper impeaching testimony. She answered the questions in the negative. To rebut this testimony defendant, on his own behalf, offered to prove by a certain witness that, during the period of time covered by the illicit relations of defendant and prosecutrix, she was on similar terms with another young man, that he also visited her at her father's house, took her to entertainments, was out with her alone, and that on the 13th day of August, 1911, she had asked this party to take her to a dance on the following Saturday evening, and that she had

also asked him to take her to another dance on the succeeding Saturday night. To these questions the state interposed the objection that the testimony was irrelevant, incompetent, and immaterial, and that it was an attempt to impeach the testimony of the prosecutrix upon a collateral matter brought out on cross-examination. The objection was sustained, and the defendant contends that this was error on the part of the court.

We are inclined to take the view that the defendant is right in this contention. The undisputed evidence showed that at the time of the trial, the prosecutrix was several months advanced in pregnacy. This of course, removed all doubt as to her having had sexual intercourse with some one previous to that time. It was the theory of the state that it was the defendant with whom this intercourse had taken place. The prosecutrix testified to such fact, and it was for the purpose of corroborating her testimony and the theory of the state that the prosecution had proved that prosecutrix and defendant had shown a mutual fondness for each other, that they had been in each other's company to a considerable extent, and that the opportunity for sexual intercourse had existed. On the other hand, it was the theory of the defense that some person other than the defendant was responsible for the condition of the prosecutrix, and it was for the purpose of corroborating this theory that the defense offered to show a similar fondness existing between the presecutrix and the other young man in question, and that an equal opportunity existed for sexual intercourse with him. This testimony was offered on the theory that it would tend to weaken the claim of the prosecutrix, that the defendant was under promise to marry, and that it was under this promise of marriage that the illicit intercourse was had. This testimony, if admitted, would have tended directly to rebut the testimony of the prosecutrix, and, if believed by the jury, would to some extent at least, have impeached and discredited her. State v. Brown, 86 Iowa, 121, 53 N. W. 92; State v. Baldoser, 88 Iowa, 55, 55 N. W. 97; Stinehouse v. State, 47 Ind. 17.

In State v. Brown, supra, the Iowa court, in considering a similar question, said: "The corroboration in this case was largely evidence that defendant visited the prosecutrix at her home, accompanied her to church, and otherwise conducted himself as her suitor, but the effect of such evidence might well have been lessened,

if not wholly destroyed, by showing that during the time the defendant was so visiting her she was accepting similar attentions from another, who had opportunities for sexual intercourse with her."

In Stinehouse v. State, supra, the defense undertook to show on cross-examination, by the witnesses who had testified to the relations existing between the defendant and prosecutrix, that at the same time she was receiving attentions from the defendant she was receiving similar attentions from others. The court held that the evidence should have been admitted, and in passing on the question used this language: "The fact stated by the witnesses in their direct examination was introduced to corroborate the testimony of the girl and as tending to show that a promise of marriage had been made by the appellant. The object of the cross-examination was to overthrow or weaken the effect of the evidence. For that purpose it was proper and the court erred in refusing to allow it. We cannot tell how much weight it would have had with the jury, but we can see that it might have had some, and as we understand the evidence, after a pretty careful examination of it, very little would have satisfied the jury that the appellant was entitled to an acquittal."

It is true that some of the occurrences attempted to be shown by the defendant happened after the first act of sexual intercourse is alleged, by prosecutrix, to have taken place; but it must be remembered that the prosecutrix had testified that the acts of sexual intercourse between herself and the defendant took place on the 18th of June, the 29th of July, and the 12th and 23d days of August, 1911, and that the trial court charged the jury that the time of the commission of the offense was immaterial, so long as it was shown to have taken place within three years prior to the filing of the information. Under this instruction, the jury may have found, and properly so, that the seduction occurred on either of the above dates. The prosecutrix also testified that, during all of this time and up until some time as late as the month of November, 1911, she was in love with the defendant, and expected to marry him, and was regarding him as her future husband. It will be noted that one of the dates on which sexual intercourse was alleged to have taken place was August 12th. Defendant undertook to show that on the very next day, August 13th, the prosecutrix was solicit-

ing the attention of another young man. If it be a fact that she did solicit such attentions from the other party, was not evidence of such conduct material as tending to disprove the marriage engagement with the defendant, and as tending to weaken the effect of the corroborative evidence from which the promise of marriage was to be inferred? Would not such evidence also tend to impeach her credibility? We believe that it would, and that in the exclusion of such testimony the trial court committed prejudicial error.

It is true that in the case of People v. Tibbs, 143 Cal. 100, 76 Pac. 904, cited and relied upon by respondent, the rule was announced by the court that "whether the prosecutrix had any other young men come to see her subsequent to the alleged seduction was * * * entirely immaterial," but in that case it does not appear that there ever was but a single act of sexual intercourse between defendant and the respondent, nor does it appear that they ever had anything to do with, or even saw, each other after that occurrence; so that the above rule is not applicable to the facts in this case. In the other case cited by respondent (State v. Abegglan, 103 Iowa, 50, 72 N. W. 305), there was only one act of intercourse proven, and the evidence showed that, immediately thereafter, the defendant abandoned the prosecutrix and paid her no further attention. In that case it was also held, and properly so, that evidence of subsequent relations with other men was immaterial.

[7] Another of appellant's assignments questions the correctness of the following instruction given to the jury by the court: "That she was an unmarried female of previous chaste character, and that there was an act of sexual intercourse under a promise of marriage, are facts which may be found from her evidence alone; if you believe, beyond a reasonable doubt, that to which she has testified on these subjects, but you cannot find that he is the guilty party unless, as stated, there is evidence other than that of (prosecutrix) tending to prove that fact." The language of this instruction is taken verbatim from the opinion of this court in State v. King, 9 S. D. 628, 70 N. W. 1046. It is conceded that it has stood unchallenged as the law of this state upon this subject for more than 15 years; but, notwithstanding this fact, the defendant contends that the court erred in giving the instruction in this case,

and that he was prejudiced thereby. Whether or not the instruction is wrong depends upon the explanation and qualification of the same as given by the court. to the jury therewith. In the King Case, supra, the instruction applied to the evidence in that case, and, in connection with the other instructions in the case, there is no question of its correctness. In this case the only instruction given to the jury in explanation of the matter complained of is as follows: "If you find from the evidence that these young people * * * (defendant and prosecutrix) kept company with each other, and acted as lovers usually do, and other like circumstances, if you find any disclosed by the evidence, are sufficient to constitute corroborating evidence to connect the defendant with the offense within the meaning of this law." This, in our opinion, does not sufficiently explain to the jury what acts and conduct of the parties are to be considered as corroborative of the testimony of the prosecutrix, and left it almost wholly for the jury to decide for themselves what acts and circumstances of the parties would constitute corroborating evidence under this statute.

It is true, as stated in the instruction complained of, that the four elements of which this offense is composed may be shown to exist by the testimony of the prosecutrix alone. The statute does not require corroboration of those facts in themselves. All that is required to be corroborated is the testimony of the prosecutrix showing the connection of the defendant with the commission of the offense. The only elements of the offense with which he has, or can have, any connection are the promise of marriage and the illicit intercourse. With the other two elements of the offense, to wit, that the prosecutrix is unmarried and of previous chaste character, the defendant has nothing whatever to do. They relate wholly to the condition of the prosecutrix, or, in other words, are mere necessary qualifications that she must possess in order that the offense can be committed at all.

The question then is, What facts or circumstances are to be considered as corroborating evidence? Owing to the secrecy of the offense, it is very rarely that direct testimony, other than that of the prosecutrix, can be had. Where the defendant has made admission or written letter of an incriminating character, they are corroborative in their nature, and are usually sufficient. But where this class of evidence is not available, the prosecution has been al-

lowed to supply their place by showing the conduct and circumstances of the parties to the transaction. This question has presented considerable difficulty, but the rule now seems to be fairly well established that evidence showing that the prosecutrix and defendant, at about the time of the alleged offense, associated themselves together and conducted themselves as accepted lovers ordinarily do is corroborative evidence connecting the defendant with the commission of the offense. This rule, however, is unsatisfactory, and subject to the criticism that it implies that the mere fact of two young persons of opposite sex, conducting themselves as accepted lovers would properly conduct themselves, is, in itself, evidence that they have indulged in illicit intercourse. This, of course, would not be correct, and no such inference can be drawn from such conduct, and no court would intentionally lay down any such rule. Such conduct, however, would corroborate the prosecutrix in her testimony that a promise of marriage existed between herself and the defendant; and, this fact and the illicit intercourse being conceded, it might be reasoned that the prosecutrix would be more likely to have indulged in sexual intercourse with the man she was expecting to marry than with any one else. To this extent and in this indirect maner, the conduct of accepted lovers might tend to connect the defendant with the commission of the offense; but the relationship shown between them would have to be something more than that of mere friendship, and the evidence would have to show that the conduct of each toward the other was different from the conduct of either toward any other party. This, of course, would require the court to admit evidence showing the relationship existing between both the prosecutrix and defendant with other persons during the time the marriage engagement is claimed to have been in existence; and this, as we have already seen, is the proper rule to be followed. These are all facts and circumstances that should be taken into consideration by the jury in considering the probative force of the corroborating evidence. The instruction complained of, while it correctly stated the law, so far as it went, should have proceeded and explained to the jury the particular elements of the offense in regard to which the testimony of the prosecutrix must be corroborated, and should have explained to the jury what facts and circumstances were to be

considered as corroborative; and, for its failure to do this, preju-
dicial error was committed.

[8]    The only other assignment that will be considered re-
lates to that portion of the instruction last above quoted, wherein
the court told the jury that if the defendant and the prosecutrix
had "acted as lovers usually do, and other like circumstances, if
you find any are disclosed by the evidence, are sufficient to consti-
tute corroborating evidence to connect the defendant with the of-
fense within the meaning of the law." The appellant contends that
the meaning conveyed to the jury by this instruction was that
there had been sufficient facts and circumstances shown to connect
the defendant with the commission of the offense. While we be-
lieve the court had reference to the character, rather than to the
quantity or extent of the corroborating evidence, we believe that,
by the use of the word "sufficient," the jury might have been, and
in view of the very meager corroboration that was shown probably
were, misled. If the court had used the word "competent" in the
place of "sufficient," then the sufficiency of the corroboration would
have been properly left to the jury. Webster's New International
Dictionary defines "sufficient" as "equal to the end proposed; ade-
quate to wants; enough." It relates to quantity rather than qual-
ity, and, as this is the general understanding of the word, it is
probable that the jury understood the court to say that the corrob-
orating evidence was sufficient in quantity to corroborate the testi-
mony of the prosecutrix in connecting the defendant with the com-
mission of the offense.

For the reasons above stated, the judgment of the trial court
is reversed, and a new trial ordered.

SMITH, J. (dissenting). I do not concur in the rule of law
announced in this case. In State v. King, 9 S. D. 628, 70 N. W.
1046, this court, I think correctly stated the law, when it said:
"That she was an unmarried female of previous chastity, and
that there was an act of sexual intercourse under a promise of
marriage, are facts which may be found from her evidence alone,
if you believe beyond a reasonable doubt *that to which she has
testified on this subject.* But you cannot find that he is the guilty
person, unless as stated, there is evidence other than that of the
prosecutrix tending to prove that fact." This instruction given in
the King case, and adopted by the trial court in this case, places

the finding of the jury, as to the two facts specified in the instruc-tion, squarely and wholly upon the truthfulness of the *testimony* of the prosecutrix herself. For this reason I do not believe that the statement in the opinion that the charge of the court dispenses with proof on the part of the prosecution can be maintained. Nor do I believe that the jury could have been misled when the court in its charge also said: "The law presumes a woman to be of chaste character unless the contrary is shown," when taken in con-nection with the further charge given by the trial court, which said: "But if there is a reasonable doubt, as I shall hereafter de-fine it, *of her chastity under all of the evidence* he will be entitled to the benefit of that doubt." This language of the court again re-quires the question of chastity of the prosecutrix to be determined *"under all of the evidence" beyond a reasonable doubt,* and in effect instructs the jury that the guilt or innocence of the accused cannot rest upon any presumption of chastity, but that chastity must be shown by the *evidence.* The prosecutrix testified to her own previous chastity, and to a first act of intercourse under prom-ise of marriage, which she alleged occurred on the 18th day of June. Either she was seduced on that day, or was not seduced at all. Under the law, no subsequent act of intercourse could amount to seduction. It is true that the *pregnancy* shown at the trial could have resulted from any of the various acts of intercourse at later dates, testified to by her, but seduction could occur but once, and that must have been at the time of the first act of intercourse. Hence the statement in the opinion that the *seduction could have occurred* on July 29th, August 12th, or August 23d cannot be cor-rect. Because of this obvious distinction, much of the reasoning of the opinion as to the improper exclusion of evidence has no ap-plication in the case. I am inclined to the view that the extreme refinement of logic and reasoning found in the opinion furnishes convenient avenue of escape through one or the other of the doors designated as "elements of the offense" and practically wipes the crime of seduction under promise of marriage from the statute book. The opinion seeks to distinguish this case from State v. King, supra, by suggesting that there are "explanations and quali-fications" which should have been given by the court to the jury in this case, not necessary in the King case. This suggestion, it must be remembered, applies only to that part of the court's in-

structions which relate to the "presumption of chastity." The only "qualifications or explanations" which could have been made by the trial court on that subject in this case are those to which I have referred above, and in what manner appellant could have been prejudiced is not apparent. The whole instructions in this case were framed squarely upon the law as stated in the King case, and in my judgment, the rule there announced should be adhered to.