S. G. B. HARVEY v. THE TERRITORY OF OKLAHOMA.

(Filed July 6, 1901.)

1. SEDUCTION—Character of Prosecutrix. Under the statutes of Oklahoma the previous chaste character of the prosecutrix in a prosecution for seduction, is a material element of the offense, and must be alleged and proven by the territory. The usual presumption of chastity in favor of a female does not prevail in a charge for seduction under promise of marriage.

2. SAME—Corroborative Proof. "Upon a trial for, having under promise of marriage, seduced and had illicit connection with an unmarried female of previous chaste character, the defendant cannot be convicted upon the testimony of the person injured, unless she is corroborated by other evidence tending to connect the defendant with the commission of the offense." (Stat. 1893, Sec. 5211.) Under this statute the female is only required to be corroborated as to the promise of marriage, and the illicit intercourse, and not as to being unmarried or of previous chaste character.

3. VENUE—How Proved. Venue need not be proven by direct and positive testimony, but may be shown by such facts and circumstances as will support a reasonable and rational inference as to where the alleged act was committed.

Harvey v. Territory of Oklahoma.

4. **JUDICIAL NOTICE—Of What Taken.** The courts will take judicial notice of the boundaries of the counties and the territory, and of the geographical location of cities and towns within its jurisdiction, and the court judicially knows that a place about eight miles southwest of Lexington, is in Cleveland county, Oklahoma.

5. **VERDICT—Not Disturbed, When.** This court will not disturb the verdict of a jury upon a controverted question of fact, where there is ample testimony both for and against the fact at issue.

6. **SEDUCTION—Competent Evidence.** The actions, conduct, promises, attentions and letters of the accused to and towards the prosecutrix after the date of the alleged seduction, are competent to be shown in evidence in actions for seduction, for the purpose of corroborating the testimony of the prosecutrix as to the promise of marriage.

7. **SAME—Competent Evidence.** It is not error to permit the father of the prosecutrix, in a prosecution for seduction, to testify that the prisoner asked him for the prosecutrix at a time subsequent to the alleged illicit intercourse. Such evidence is competent for the purpose of corroborating the female as to the previous promise of marriage.

8. **SAME—Corroborative Evidence.** The female in a prosecution for seduction is not required to be corroborated by direct and positive proof of facts independent of her testimony, but only as to such facts and circumstances as usually form the commitants of the main fact sought to be established, which facts should be sufficiently strong within themselves, and pertinent in their bearing on the case, to satisfy the jury of the truthfulness of the prosecutrix in her evidence on the principal facts.

9. **CUMULATIVE EVIDENCE—Not Ground for New Trial.** It is not reversible error to overrule a motion for new trial based upon newly discovered evidence, where it appears that the new evidence sought to be used is cumulative.·

10. **ADDITIONAL EVIDENCE—When Introduced.** It is within the discretion of the trial court to re-open a cause after the argument has commenced, and permit the prosecution to introduce additional evidence, and unless there has been a clear abuse of such discretion to the manifest prejudice of the defendant, the appellate court will not interfere.

(Syllabus by the Court.)

*Error from the District Court of Cleveland County; before*

*B. F. Burwell, Trial Judge.*

*Newell & Jackson,* for plaintiff in error.

*J. C. Strang, Attorney General,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The plaintiff in error, S. G. B. Harvey, was prosecuted in the district court of Cleveland county for the crime of seduction, and was convicted and sentenced to serve a term of one year and three months in the territorial penitentiary. From this judgment he appealed and brings the cause to this court for review.

A number of alleged errors are assigned, but we will only consider those which are argued in the brief of the plaintiff in error.

The statute, section 2171, Oklahoma Statutes 1893, defines seduction as follows:

"Every person who, under promise of marriage, seduces and has illicit connection with any unmarried female of previous chaste character, is punishable by imprisonment in the territorial prison not exceeding five years or by imprisonment in a county jail not exceeding one year, or by fine not exceeding one thousand dollars, or by both such fine and imprisonment."

The crime of seduction as thus defined embraces four material and essential elements, viz.: 1st. A promise of marriage. 2nd. Seduction and illicit connection. 3rd. An unmarried female. 4th. Previous chaste character of the female. It is incumbent on the prosecution to allege and prove each of these essential elements.

Some authorities hold that previous chaste character is presumed in the female until attacked by the defense, but the cases supported by the better reasoning reject this rule, and hold that previous chaste character of the prosecutrix being a material element of the crime, must be established in the first instance by competent proof, the same as any other necessary averment. And we accept this as the correct doctrine. The presumption of innocence which surrounds the defendant cannot be overcome by a presumption in favor of the prosecutrix, and thus shift the burden of proof to the defendant. (*West v. State,* 1 Wis. 209; *People v. Wallace,* 42 Pac. 159, [Col.]; *People v. Roderiges,* 49 Cal. 9; *Zabriskie v. State,* 43 N. J. Law, 640; *State v. Wenz,* 42 N. W. [Minn.] 933; *State v. McCoskey,* 104 Mo. 644; *Ferguson v. State,* [Miss.] 15 So. 66.)

It is further provided by statute, section 5211, Statutes Oklahoma, 1893:

"Upon a trial for having, under promise of marriage, seduced and had illicit connection with an unmarried female of previous chaste character, the defendant cannot be convicted upon the testimony of the person injured, unless she is corroborated by other evidence tending to connect the defendant with the commission of the offense."

It is contended by plaintiff in error that this statute requires corroboration of the prosecutrix on every element of the offense. We cannot agree with this contention. The authorities seem to be in irreconcilable conflict on this question, but such conflict is more apparent than real. Almost every state has a statute requiring some kind of corroboration in this class of cases, yet these statutes very

materially vary in their provisions and requirements. It is by reason of this difference in the various statutory provisions, that the seeming conflict in the decisions of the courts arises. We must first determine the meaning and purpose of our own statute. The only requirement is that the prosecutrix must be "corroborated by other evidence tending to connect the defendant with commission of the offense." Now, there are but two things that he is charged with doing, viz.: promising to marry the prosecutrix, and having illicit connection with her. The other two elements of the offense go to the character of the person protected by the law, viz.: an unmarried female, and one of chaste character. With these two elements the defendant is in no way connected: no action of his brings about either condition, but if he has promised to marry her, then he is connected with this element of the crime, and her evidence alone is not sufficient to establish such promise, and if he has had illicit intercourse with her, this act also connects him with the offense, and the evidence of the female with whom the intercourse was had is not sufficient to prove such fact. Hence, we think the purpose of the statute is to require the prosecutrix to be corroborated on the promise of marriage and the illicit intercourse, and not upon the elements that go alone to her characteristics, viz.: that she was unmarried, and that she was of chaste character.

The supreme court of New York, upon a similar statute, has adopted this rule, and we think it reasonable and sound. (*Kenyon v. People*, 26 N .Y. 203; *Boyce v. People*, 55 N. Y. 644; *Armstrong v. People*, 70 N. Y. 44; *People v. Kearney*, 110 N. Y. 190.)

It is next contended that proof that illicit intercourse

was procured under a promise of marriage is not alone sufficient to warrant a conviction under our statute; that in addition to this the female must have been seduced by arts, wiles, deceit, etc. While it is true the statute does use the phraseology, "seduces and has illicit connection" under promise of marriage, it is the false promise, fraud and deception of the accused, and the reliance and yielding of the female that constitute the seducing as therein meant. And proof that a person by means of a false promise of marriage, induced an unmarried female, of chaste character, to yield to his desires, and thereby obtained her consent to and did have sexual intercourse with her, is sufficient to warrant a conviction for the crime of seduction as defined and denounced by our statute.

This rule is supported by authority: (*Boyce v. People,* 55 N. Y. 644; *Kenyon v. People,* 26 N. Y. 204; *People v. Wallace,* 42 Pac. 159; *Zabriskie v. State,* 43 N. J. Law, 640; *Phillips v. State,* 108 Ind. 406; *People v. Millspaugh,* 11 Mich. 278.)

The most serious question presented for our consideration is as to whether any venue was proven on the trial of the cause. It is a well settled rule of law that venue need not be proved by direct and positive evidence. If such facts and circumstances are proven as that the reasonable and rational inference arises that the offense was committed at the place charged, then the verdict of the jury will not be disturbed; or, if such facts are shown as that the court will judiciously know that the place of the alleged crime was within the county charged, then the proof will be deemed sufficient.

The offense in this case is alleged to have been committed in the county of Cleveland, Territory of Oklahoma, The prosecutrix testified that she resided with her father eight miles southeast of Lexington, and had lived there continuously for six years.

Bowdish Bailey testified that he was the father of the prosecutrix, and that he lived on a homestead in Cleveland county, Oklahoma, and had lived there nearly six years.

Frank G. Williams testified that he lived in Oklahoma, thirteen miles southeast of Lexington.

The defendant testified that he first had sexual intercourse with the prosecutrix in August, 1896, about one hundred or one hundred and fifty yards east of her father's house; that they walked out about sun down and laid down on the ground, and after the intercourse got up and walked back to the house.    There was other testimony to the effect that the defendant lived about six miles southeast of Lexington, and that. the prosecutrix lived with her father about two miles from the defendant's home, and that he visited her at her father's home frequently.

From this evidence it was no unwarranted inference for the jury to find that the seduction took place in Cleveland county, Oklahoma.    But if the inference was not a reasonable one, the facts sufficiently appear to require the court to take judicial notice of the locality where the acts complained of occurred.

Courts take judicial knowledge of the boundary lines of the territory, and the character of any stream or river

forming a boundary line. The court knows judicially that Cleveland county is bounded on the south by the South Canadian river, and that said river is a wide bed of sand, frequently covered with a flowing volume of water.

Courts also take judicial notice of the geographical position and location of cities and towns within their jurisdiction. (*Harding v. Strong,* 42 Ill. 148; *Indianapolis, etc. R. R. Co. v. Stephens,* 28 Ind. 429; *Indianapolis, etc. R. R. Co. v. Case,* 15 Ind. 42; *Woodward v. Chicago, etc. R. R. Co.* 21 Wis. 309.)

This court takes judicial knowledge of the location of the town of Lexington, in Cleveland county, and knows that a place about eight miles southeast of said town is in Cleveland county, Oklahoma. It would hardly be consistent with that reason and experience possessed in common by all persons of ordinary intelligence, to indulge the presumption that the defendant, in the last hours of the declining day, when the luminous orb was casting its last lingering rays of fading light over the fructuous valley of the Canadian, and was withdrawing his effulgent face from the scenes of the deed he was about to commit, would have taken his confiding victim, led her away from her father's cottage, and on foot traversed the difficult and treacherous sands of the shifting Canadian, in order that he might get into Chickasaw soil to make his bed. Oh, no! Oklahoma sod was satisfactory for his purposes, and his own testimony has settled the question of venue.

The next contention by counsel for plaintiff in error is that the prosecutrix was not corroborated as required by

law.  As we have already stated, she was only required to
be corroborated upon two propositions, viz:  the promise of
marriage, and the illicit connection.  The defendant himself
testified to the acts of sexual intercourse, and fully corrobor-
ated her in that particular.

But he denied the promise of marriage, and on this
question her testimony alone would not be sufficient to
warrant a conviction.  There must be proof of such facts
and circumstances independent of her testimony and cor-
roborative thereof as will satisfy the jury of the truthful-
ness of her statements.

The supreme court of Minnesota, in *State v. Timmons*,
4 Minn. 325, in discussing a similar statute, very appro-
priately said:

"Now, it cannot be intended that by being corroborated
the statute means that there shall be proof of these facts
sufficient in itself to establish them independently of the
testimony of the girl, as that would render the statute
practically null.  Parties seldom seeks publicity in such
matters.  From their nature they transpire in secret, and
it is only by accident that any positive proof can ever be
brought to bear upon them, except through the parties
themselves.  The corroboration, therefore, intended by the
statute, is proof of those circumstances which usually form
the concomitants of the main fact sought to be established,
which circumstances should be sufficiently strong in them-
selves and pertinent in their bearing on the case, to satisfy
the jury of the truthfulness of the witness in her testimony
on the principal facts.  In this case the woman testified
positively to the promise to marry and the seduction which
followed, and also that she never  had  illicit  intercourse
with any other man than the defendant, and with him only,

under and by reason of his continual and repeated promises to marry her. In the fact of the promise she is supported by both parents, who testify to the admissions of the defendant, his admonitions to their daughter to be faithful to her vow to him at the time another man wished to marry her. Also by the consultations she had with them concerning the marriage and her preparations for the same, all of which were competent evidence in corroboration of this fact."

In the case of *Boyce v. People,* 55 N. Y. 644, it is said in the syllabus:

"The statute is satisfied if the prosecutrix is supported by such evidence as in the nature of things the case is susceptible of, i. e., circumstances ordinarily proven in support of an allegation of mutual promises to marry, such as attentions, correspondence, frequent visits and familiarities and other circumstances tending to prove the material facts and to satisfy the jury that the prosecutrix is worthy of credit."

Applying these rules to the case under consideration, we think the prosecutrix was amply corroborated as to the promise of marriage. It was clearly shown that the defendant had been paying attentions to the prosecutrix for quite a long period; that he frequently visited her at her father's home; met her at parties and dances; corresponded with her and wrote her affectionate letters. It is true he denied writing these letters, but the jury evidently did not believe his testimony. He had spoken to others of the prosecutrix in favorable and complimentary terms, and after the date of the alleged illicit intercourse asked the father of the girl for her, in the presence of the family.

The plaintiff in error complains of the ruling of the trial court in admitting the letters of the accused, written after the alleged seduction, and also in admitting the testimony of the father of the girl as to the request of the accused for his daughter. There was no error in admitting this class of testimony. It was competent for the purpose of corroborating the testimony of the prosecutrix that a promise of marriage had been made by the accused, and that she yielded by reason of such promise. The letters disclose in their very terms that some previous talk had been indulged in on the subject of marriage and also tend to show the character of the accused.

"Thine own mouth condemneth thee, and not I,
Yea, thine own lips testify against thee."—Job 15:6.

On December 10, 1896, he wrote her from Heart, I. T. In this letter he informs her that a young gentleman is going to get married and will give a big dance and supper, and concludes as follows:

"I wish you could be here and go with me there.    I feel very lonesome without you.   I wish it was you and me going to give the dance.   School has called, so I will have to close for the time.          Bye, Bye, Darling Girl.

"As sure as the vine around the stump, you are my own sweet sugar lump."

Again on January 12, 1897, he wrote her from the same place, and after apologizing and making excuses for his failure in going to see her, expresses a desire to see her and be with her. He then complains of being unable to get work, and his failure to make anything, and says:

"It would not suit me to marry at present, as I am not fixed to support a lady as I would wish to. If you knew what had happened since we were talking about marrying up there at the old home place. We will have to wait as we agreed to do. Please don't think hard of me for writing this to you. Darling girl, I don't know when I can see you again, I will come when I can. As I can't think of any more to write this time, I will bring this epistle to a frazzle. Good bye honey.

> "It rained all night the day I left,
> The weather was so dry,
> I thought by gosh, I'd freeze to death,
> Dear Fannie, don't you cry,
> Oh! Miss Fannie, Oh! don't cry for me,
> I' going down to old Fort Smith,
> That other pretty girl to see.
>
> "Your own true love,
> "S. G. B. HARVEY."

How appropriate the words of Solomon: "A fool's mouth is his destruction, and his lips are the snare of his soul."—Prov. 18:7.

On April 25, 1897, he wrote her as follows:

"Miss Fannie Bailey: I thought I would write you a few lines to let you know I am well and hope this will find you the same. Well, Fannie, I wish I could see you. I will try to come with Frank when he comes. Times are hard and I can't make any money now, but think I will make some this fall, and if I do I will marry you. If I don't, will marry you anyhow. I am tired of batching, so let's try and live happy.

> "We may if we will,
> Find some pleasure in life to o'er balance the ill;
> There never was an evil if well understood,
> But what rightly managed would turn to good.
>
> "S. G. B. HARVEY."

These letters also corroborate the testimony of the prosecutrix to the effect that after the first promise of marriage, he kept putting her off with promises to carry out the agreement at some future period.

Evidence of the actions, conduct, promises and attentions of the accused after the alleged seduction, are competent for the purpose of corroborating the prosecutrix. (*States v. Brown*, 45 Atl. 800.)

The letters were all written after the defendant, according to his own testimony, had repeatedly had sexual intercourse with the prosecutrix, and show that he was still deceiving her by holding out hopes of marriage.

"An hypocrite with his mouth destroyeth his neighbor." Prov. 11: 9.

Another contention of the plaintiff in error is that the verdict of the jury is not sustained by sufficient evidence. The appellate court will rarely disturb the verdict of the jury on the weight of the evidence. The only controverted questions of fact under the evidence were the previous chaste character of the prosecutrix and the promise of marriage. As to her character for chastity there was evidence both for and against. One or two witnesses for the defense testified on the trial that they had sexual intercourse with Miss Bailey a short time prior to the alleged seduction. Other evidence was introduced tending to show want of chastity. The jury heard all this evidence and passed upon its weight and the credibility of the witnesses. Evidently the jury did not believe them, and we cannot say that the jury were wrong.

As to the promise of marriage, we think the prosecutrix was amply corroborated, and we see no reason for disturbing the verdict of the jury.

The plaintiff in error within the proper time filed a motion for a new trial on the grounds of newly discovered evidence. This motion was supported by the affidavits of two persons, to the effect that they had sexual intercourse with the prosecutrix in the summer prior to the alleged seduction. There were also some other affidavits tending to impeach the chastity of the prosecutrix. The trial court overruled this motion, and the plaintiff in error complains of such ruling. We have examined the motion and affidavits, and find no new facts set forth in them. The chastity of the prosecutrix was an issue on the trial; considerable evidence was introduced both to support and impeach her chastity; other witnesses for the defense testified to having sexual intercourse with her. She denied all these statements, and testified positively that she had never had sexual intercourse with any one except the defendant. The new evidence was for the purpose of proving want of chastity. This issue was the one on which the principal fight was made on the trial, and the evidence offered in support of the motion could only be cumulative and corroborative of that already introduced by the defense to prove unchastity. We cannot reopen the case to permit the defendant to introduce cumulative evidence upon an issue so fully presented as this was on the trial below.

The last alleged error relied upon by the plaintiff in error is the action of the trial court in reopening the case after the argument had commenced, to allow the prosecu-

tion to introduce in evidence a sample of the handwriting of the defendant, which had been written during the trial, but not formally offered in evidence. This was a matter within the discretion of the trial court, and we think he exercised the discretion properly.

We have examined the evidence and record with considerable care. It is doubtful if the defendant could have been convicted had he remained off the witness stand. But he offered himself as a witness, and testified fully as to his friendly relations with the prosecutrix, his attentions to her, and visits to her home; his illicit connection with her on numerous occasions, and only denied the promise of marriage, and on this question his letters, which we have no doubt he wrote, sufficiently corroborate the prosecutrix. Well may he exclaim in the language of Job:

"If I justify myself, mine own mouth shall condemn me."—Job 9:20.

When a man enlists the attentions and confidence of a young girl, and by promising to make her his wife creates between them the most sacred and confidential of relations, and by means of such promise and hopes, succeeds in obtaining from her concessions of privileges, sinful and impure it is true, but from their very guilt, proof of the depth of the love and confidence which extorted them, and aggravates his treachery and hypocrisy by continuing to hold out to his victim the delusive hope that he will redeem his promise, and thus induces her to yield anew, until at last infidelity and duplicity is rendered certain by his marriage with another, and the ruined one, in the despair of shame and exposure, calls him to account before a court of justice, the law

will be slow to permit him to object that, by reason of her condition and acts, continued perhaps to shield him, she was a woman of unchaste character.

We find no substantial error in the record.

The judgment of the district court of Cleveland county is affirmed, and it is ordered that a mandate issue to the district court of Cleveland county, directing the sheriff to execute the original judgment in this case.

· Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.