## ADOLPHUS BUTTS v. STATE.

### No. A-2400.  Opinion Filed May 18, 1916.

#### (157 Pac. 704.)

1. **SEDUCTION—Evidence—Sufficiency—Promise of Marriage.** In a prosecution for seduction under a promise of marriage, it is not necessary that the promise should have been expressed in any set form or in any particular language. It is sufficient if language was used which implied such a promise, and was intended to convey that meaning, and was in fact so under stood by the prosecutrix.

2. **SEDUCTION—Prosecution—Pleading and Proof.** Sexual intercourse "with an unmarried female of previous chaste character," to which her consent is obtained by promise of marriage is seduction as defined by Penal Code, sec. 2423, Rev. Laws, and all of the elements of seduction as defined by the statute, including the previous chaste character of the prosecutrix must be alleged and proved to support a conviction.

3. **SEDUCTION—Evidence—Corroboration.** Proc. Crim. sec. 5886, Rev. Laws, provides that upon a trial, "for having, under promise of marriage, seduced and had illicit connection with an unmarried female of previous chaste character, the defendant cannot be convicted upon testimony of the person injured unless she is corroborated by other evidence tending to connect the defendant with the commission of the offense," **held**, that under this statute the prosecutrix is only required to be corroborated as to the promise of marriage, and the illicit intercourse; **held**, further, the statute does not require direct and positive corroborative evidence, but simply such facts and circumstances as fairly tend to support the testimony of the prosecutrix.

4.   **SEDUCTION—Evidence—Corroboration.** Upon a trial for seduc-
     tion under a promise of marriage corroboration as to the fact
     that the prosecutrix was "an unmarried female of previous chaste
     character," is unnecessary; this allegation being simply descrip-
     tive of the person whom it was the purpose of the statute to
     protect.

5.   **SEDUCTION—Evidence—Admissibility.** Upon a trial for seduc-
     tion under a promise of marriage, it is proper to admit evidence
     to prove the birth of the child as evidence of the fact of
     seduction.

6.   **SEDUCTION—Evidence—Corroboration—Sufficiency.** The corrob-
     orative evidence in this case as to the promise of marriage
     considered and **held** sufficient to sustain the verdict.

7.   **SEDUCTION — Character of Female — "Previous Chaste Char-
     acter."** A female of "previous chaste character" is one who
     has not had sexual intercourse unlawfully, out of wedlock, know-
     ingly and voluntarily.

*Appeal from District Court, Murray County;*
*R. McMillan, Judge.*

Adolphus Butts was convicted of seduction, and appeals.
Affirmed.

*Blanton & Andrews,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *J. B. Harrison,* Asst. Atty.
Gen., for the State.

DOYLE, P. J.   The plaintiff in error, Adolphus Butts, here-
inafter referred to as the defendant was tried and convicted for
having under promise of marriage, seduced one Fay Dodson, an
unmarried female of previous chaste character, and in accordance
with the verdict of the jury he was sentenced to fifteen months
imprisonment in the state penitentiary.   From the judgment and
sentence he appealed by filing in this court February 15, 1915, a
petition in error with case-made.

The evidence shows that Fay Dodson, the prosecutrix lived
with her parents at Davis, and she became acquainted with the
defendant in August, 1911.   The defendant was engaged in
teaching at the Hoover school house about seven miles west of
Davis, and began keeping company with the prosecutrix in
December of that year.   From then until the following May he

called on her at her home nearly every week. His custom was to come to Davis each week on Friday evening and he would call on her that night and the Saturday and Sunday following. She was then under eighteen years of age. That the following school year he was engaged in teaching school at the Wynnewood View school house, about nine miles from Davis, and while teaching there his usual custom was to come to Davis on Friday evening each week and call on her and on the Saturdays and Sundays following until the end of his school term about May 1, 1913.

The prosecutrix testified that in May, 1912, he proposed, was accepted, and promised to marry her. That relying on his promise of marriage she consented and he had carnal connection with her. That they were to be married Christmas, 1912; that a few days before Christmas he went to Edmond to visit his parents. When he returned he said, "that he had got into it with a girl up there at Edmond, and he was afraid that she would put him in the penitentiary if he married; that he was going to take the girl at Edmond to Oklahoma City and have her operated on.", He then told her they would get married the coming Easter. That she made preparations to be married on Easter Sunday and later he told her that they could not get married until after his school was out; that after Christmas he called on her two or three times a week as before. That she had made all the necessary preparations for her marriage and when his school was out he said he had to go home and make arrangements there for them to live with his father and mother. That she told him her preparations for the marriage were complete; that she had made up all her clothes including her wedding dress as he had asked her to do; that he then wanted her to meet him at Oklahoma City and they would be married there; and she told him her parents would object to that arrangement; that at that time she was in the family way. That shortly after they became engaged she went to Midlothian, Texas, to visit her brother for a few weeks and the defendant wrote her that he was coming there to visit her; that he arrived there the following Sunday and visited her at her brother's house several days; that he wanted her to return with him and they would

stop at Ft. Worth and register as man and wife, saying: "That there would be no harm in that, that lots of boys and girls did that way." That this was his first improper proposal to her and she refused to return with him. That when she told him that she was pregnant he gave her some tablets to take. That after their first carnal connection she submitted to him nearly every time he called on her up to May 6, 1913, which was the last time she saw him. That she loved him and believed that he was in earnest when he said he was going to marry her when she yielded to him the first time, and for that same reason she yielded to him thereafter; that she never did go with any other man except that she went two or three times with a boy and no other man ever had sexual intercourse with her. That she was delivered of a child on the 5th day of November, 1913, of which the defendant was the father. On her cross examination she was asked to identify about a dozen letters, some of them she admitted writing, but claimed that they had been changed, and others she denied. She testified that on the request of the defendant before he deserted her, she destroyed all the letters that he had written to her. Her parents testified to the attention of the defendant to their daughter and her preparaions for marriage, and there was other testimony to the same effect.

When the state rested counsel for the defendant moved the court to direct the jury to return a verdict of not guilty, which motion was overruled and exception allowed. Adolphus Butts, the defendant, in his own behalf testified that his age was twenty-three years; that he first met Fay Dodson in 1911; that two or three months after he met her he began keeping company with her; that it might be said that Miss Dodson and he were sweethearts; that his making love to her was nothing more than one would usually do while going with a young lady, and he might have slightly expressed affection for her at times, but he never asked her to marry him, and he denied that he had ever promised to marry her; that their relations became illicit about April 1, 1912; that her parents were strict with her and they did not get out together very often. That she was passionate and he

accomplished his purpose without difficulty and the same thing occurred seven or eight times before they went to Texas and occurred while there. That at her suggestion he got her the medicine, suppositories. That their illicit intercourse continued until January or February, 1913, that there was nothing ever said about their marriage until she became pregnant; that he never had any idea of marrying her, although he might have told her that he loved her; that he went with other girls, but she was the only girl he ever ruined; that his guess would be that he had had intercourse with her fifty times prior to the time she claimed was the first. He did not deny that he was the father of her child.

It appears that in May, 1913, shortly after his school closed the defendant married another woman.

The appeal in this case presents but one question which is deemed worthy of more than passing notice. It is insisted that the verdict and the judgment pronounced thereon are contrary to the law and evidence. The contention is grounded on the proposition that the testimony of the prosecutrix was not corroborated as required by law, and for this reason the court erred in denying the defendant's motion to advise the jury to acquit the defendant when the state rested its case.

Our criminal code provides that:

Upon a trial "for having, under promise of marriage, seduced and had illicit connection with an unmarried female of previous chaste character, the defendant cannot be convicted upon testimony of the person injured, unless she is corroborated by other evidence tending to connect the defendant with the commission of the offense." Section 5886 Rev. Laws.

To constitute the crime of seduction as defined by our penal code (Section 2423 Rev. Laws.) There must be seduction of and illicit connection with an unmarried female of previous chaste character under promise of marriage, and the requirement of the statute is that the prosecutrix must be "corroborated by other

evidence tending to connect the defendant with the commission of the offense."

In the case of *Cluck* v. *The State,* 9th Okla. Cr. 580, 132 Pac. 930, it is held:

"Under this statute the testimony of the prosecutrix must be corroborated as to the promise of marriage and illicit intercourse, but not as to her being unmarried and of previous chaste character."

And see *Harvey v. Territory,* 11th Okla. 156, 65 Pac. 837.

Proof of facts and circumstances which usually attend an engagement of marriage is sufficient for the purpose of corroborating the testimony of the prosecutrix, and the corroboration independent of the prosecutrix's testimony need only amount to proof of those circumstances usually concomitants of the main facts, and which are sufficiently strong and pertinent to satisfy the jury of the truthfulness of the prosecutrix's testimony. In this case the carnal connection is admitted, but the promise of marriage is denied by the defendant. The prosecutrix testified positively that the defendant promised to marry her, and that by reason of his often repeated promise to marry her, he succeeded in seducing and having carnal connection with her. The corroborating circumstances relied upon by the state, independent of her testimony consist mainly of evidence of attentions of the defendant upon the prosecutrix in the character of a suitor for a period of nearly two years, during which time the parties kept company and acted as lovers usually do. He admitted that his attentions were unremitting for a year previous to December, 1912, when it is alleged that the offense was committed. During that interval he visited her two or three times every week, and escorted her to church and evidenced for her such partiality by his attentions as to furnish evidence from which the jury had the right to consider as bearing upon the alleged promise of marriage, and he continued to keep company with her for six months thereafter. Other circumstances are detailed in the evidence which the jury might properly regard as bearing upon the question of the alleged

promise of marriage, all of which were competent in corroboration of this fact. It appears that this is a case where actions speak louder than words, and the question of the sufficiency of the evidence to establish the fact of a false promise of marriage in order to obtain her consent to sexual intercourse was for the jury.

It is also urged that the evidence was insufficient to show that the prosecutrix was a female of previous chaste character; that by her own admissions as indicated by the letters in evidence received by the defendant purporting to be from the prosecutrix, she had been unchaste in her previous intercourse with the defendant. The words used in the statute, "an unmarried female of previous chaste character," mean the same in law as in morals; that is actual personal virtue in distinction from a good reputation. However, where the defendant introduces proof of specific facts tending to show unchaste character then the state may in rebuttal introduce evidence of her general reputation for chastity. A female of previous chaste character "is one who has not had sexual intercourse unlawfully, out of wedlock, knowingly and voluntarily."

*Marshall* v. *Territory,* 2nd Okla. Cr. 136, 101 Pac. 139;

*Castleberry* v. *State,* 10th Okla. Cr. 504, 139 Pac. 132.

Under the statute the previous chaste character of the prosecutrix in a prosecution for seduction is a material element of the offense and must be alleged and proved beyond a reasonable doubt, and in this case the court so instructed the jury. The law presumes that every female is chaste, but the presumption in favor of the chastity of the prosecutrix in a seduction case is overcome by the presumption of the innocence of the defendant. The proof that the prosecutrix was a female of previous chaste character need not be made by evidence directly upon the point other than the testimony of the prosecutrix, but may be shown *prima facie,* by presumptions from other facts. In this case it was shown as an undisputed fact that the prosecutrix had always resided with her parents and went in such society as the neighborhood afforded. This was competent evidence that she was of

previous chaste character and the question of the sufficiency of the evidence to establish that fact was for the jury.

A careful examination of the record fails to disclose any material errors in the rulings upon evidence or the instructions of the court. In our opinion the evidence amply supports the verdict. A case seldom appears in criminal annals showing more depravity in the defendant or a greater outrage to common decency and public ·morals. It is to be hoped that the effect of the conviction in this case will be to protect other girls, whose untutored wills might be overcome by seducer's wiles. The judg-. ment is affirmed.

ARMSTRONG, J., concurs.