## HAROLD RICKEY v. STATE.

No. A-9858.    June 3, 1942.
(126 P. 2d 753.)

399

Blanton, Curtis & Blanton, of Pauls Valley, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Harold Rickey, was convicted in the district court of Garvin county of the crime of seduction, and sentenced to serve one year in the State Penitentiary and pay a fine of $200.

The statute under which the defendant was convicted provides:

"Upon a trial * * * for having, under promise of marriage, seduced and had illicit connection with an unmarried female of previous chaste character, the defendant cannot be convicted upon testimony of the person injured unless she is corroborated by other evidence tending to connect the defendant with the commission of the offense." 1931 O. S. § 3073; 22 O. S. 1941 § 744.

The defendant admits the illicit relations had with the prosecutrix, but claims there was never any promise

of marriage; while the prosecutrix testified that they had agreed to be married and that she had submitted to his embraces because of the promise of marriage.

The acts of sexual intercourse being admitted, the sole question presented for consideration of this court is whether there has been sufficient corroboration of the testimony of the prosecutrix to the promise of marriage.

The prosecutrix testified at the time of trial that she was 20 years of age. That she started going with the defendant while they were students in Pauls Valley High School in 1936, and that they kept company continuously since that time until about April 1, 1939, at which time, the prosecutrix being in a pregnant condition, the defendant fled from his home in Pauls Valley and did not return for about six months, at which time this criminal action was instituted.

The defendant was about three years older than prosecutrix. She testified that a few months after she and the defendant commenced going together he spoke often to her of marriage to her, and that she told him she was not old enough to marry and wanted to finish high school. That the defendant wanted her to marry him and go live with his family. That she agreed to marry the defendant as quickly as she finished high school. That they had sexual intercourse together in 1937 and continued such relations at various periods of time until she became pregnant in October, 1938. That on Thanksgiving Day in 1938, after she had become pregnant, she ate dinner at defendant's home with his family, they went to Ardmore to a football game that afternoon, and she returned to his home and ate supper with him that night. That they fixed the marriage definitely for January 10th at Ada, Okla., but that defendant got mad at her because she did not eat Christmas dinner at his house with him

and refused to go ahead with the marriage on that date. That defendant brought her some medicine to take for the purpose of procuring an abortion, and just before defendant fled, about April 1st, he gave her $25 and told her to go to Oklahoma City and procure an abortion. That in the month of July a girl baby was born to her and that the defendant, Harold Rickey, is the father of the child.

She further testified that she had never had sexual intercourse with any person other than defendant and did not go with any other person during the three years that she was going with the defendant, except for two or three months in the spring of 1938, during a "bust up" with defendant, she had some dates with a young man by the name of Giddens.

The prosecutrix told of several gifts which she had received from defendant. Included among these were a house-coat, football sweater, wrist watch, and an engraved locket with the names "Leta and Harold" on a couple of hearts with an arrow connecting the names. The proof further showed that at one time in 1937, when prosecutrix was confined to hospital because of illness, the defendant visited her daily and brought her flowers on each occasion.

The father of prosecutrix testified that defendant had kept company with his daughter during the period of time related by prosecutrix. That he, together with the sheriff, went to see defendant after he learned Leta Mae was pregnant and talked to defendant; the defendant "acknowledged that he was the author of her condition." That defendant said he was not able and did not want to marry Leta and said he had gotten some medicine for her to cause an abortion.

Mrs. Tompkins testified that defendant spent a great deal of his time during 1937 and 1938, and up to February, 1939, calling on her daughter; that he gave her many presents. That as soon as the defendant found out that witness and her husband had learned of her daughter's pregnancy he quit coming to their home.

James Cochran testified on behalf of defendant that he was a pal of defendant and had been on the football team with him at Pauls Valley. That he was frequently in the company of defendant and prosecutrix during the years 1937 and 1938. That he was not present when the date of January 10, 1939, was fixed for their marriage. He did not ever hear defendant ask prosecutrix to marry him, but he did hear the prosecuting witness say, many times, "Let's get married," but defendant did not ever, in his presence, indicate that he wanted to marry her.

Louis Ray Butler testified that he was 23 years old and had known defendant and Leta Mae Tompkins for several years. The testimony of this witness was similar to that of James Cochran.

The mother of defendant testified on direct examination that she knew of her son visiting with Leta Mae Tompkins and that she had visited at her house a few times. That neither Leta nor Harold had ever said a word to her about any contemplated marriage. However, on cross-examination, the question was asked: "Harold had told you he wanted to bring Leta Mae home and help you and marry her," and the witness answered, "Yes, sir." The witness further identified a letter which she had written to the prosecutrix after her son had left. In this letter she expressed sympathy for the condition of prosecutrix. Among other things stated in the letter appears the following: "As to his marrying, he had talked of it many times but never seriously, I thought, and as to his

marrying and bringing any girl here to help me, I would positively not permit him to do such. It would not be fair to the girl."

The defendant testified that he had been dating prosecutrix for two and one-half or three years; that he would go to see her two or three times a week, "sometimes more frequently and sometimes not so often." That in 1938 prosecutrix also went with Gorneau Giddens. That in May, 1938, prosecutrix told him she was pregnant and asked him for money to procure an abortion and he gave her $17.50. That he thought she spent the money for new clothes. Defendant admitted having illicit relations with prosecutrix and admitted giving her money in April, 1939, for the purpose of procuring an abortion. Defendant specifically denied that he ever promised or intended to marry prosecutrix but stated that he left his home in April, 1939, for fear of personal violence from prosecutrix' folks and remained away for five and one-half or six months. He admitted giving prosecutrix the gifts which have been above enumerated, and also a rug which he procured at the Fat Stock Show at Fort Worth, and many other lesser gifts, including flowers and candy.

Several witnesses testified to the good reputation of the defendant in the community where he resided.

This court has had occasion many times to consider cases similar to the instant case. In Butts v. State, 12 Okla. Cr. 391, 157 P. 704, it is held:

"In a prosecution for seduction under a promise of marriage, it is not necessary that the promise should have been expressed in any set form or in any particular language. It is sufficient if language was used which implied such a promise, and was intended to convey that meaning, and was, in fact, so understood by the prosecutrix."

In the body of the opinion it is stated:

"Proof of facts and circumstances which usually attend an engagement of marriage is sufficient for the purpose of corroborating the testimony of the prosecutrix, and the corroboration, independent of the prosecutrix's testimony, need only amount to proof of those circumstances usually concomitants of the main facts, and which are sufficiently strong and pertinent to satisfy the jury of the truthfulness of the prosecutrix's testimony. In this case the carnal connection is admitted, but the promise of marriage is denied by the defendant. The prosecutrix testified positively that the defendant promised to marry her, and that by reason of his often-repeated promise to marry her he succeeded in seducing and having carnal connection with her. The corroborating circumstances relied upon by the state, independent of her testimony, consist mainly of evidence of attentions of the defendant upon the prosecutrix in the character of a suitor for a period of nearly two years, during which time the parties kept company and acted as lovers usually do. He admitted that his attentions were unremitting for a year previous to December, 1912, when it is alleged that the offense was committed. During that interval he visited her two or three times every week, and escorted her to church, and evinced for her such partiality by his attentions as to furnish evidence which the jury had the right to consider as bearing upon the alleged promise of marriage, and he continued to keep company with her for six months thereafter. Other circumstances are detailed in the evidence which the jury might properly regard as bearing upon the question of the alleged promise of marriage, all of which were competent in corroboration of this fact. It appears that this a case where actions speak louder than words, and the question of the sufficiency of the evidence to establish the fact of a false promise of marriage in order to obtain her consent to sexual intercourse was for the jury."

See, also, Cluck v. State, 9 Okla. Cr. 580, 132 P. 930; Robertson v. State, 53 Okla. Cr. 214, 9 P. 2d 963.

We have given this case very careful attention and have come to the conclusion that the actions of the defendant toward the prosecutrix corroborate her testimony, and that the sexual relations were indulged in because both parties contemplated marriage. The attention which the defendant paid to the prosecutrix while she was in the hospital, the frequent bestowal of gifts, the taking of her to his home for visits, are very strong circumstances which convince us that these two young persons were infatuated with each other. We think the record supports the conclusion that the defendant, at the time the sexual acts were commenced, actually intended to marry the prosecutrix. During the two-year period that these acts continued and which they had to wait until the prosecutrix had finished high school, something occurred to cause the defendant to lose the love and respect which he formerly held toward the young girl.

He is the father of her child. He sought to evade the legal and moral responsibility which was his in flight. This court places no credence at all in the attempt of the defense to inferentially show that one Giddens might possibly have been the father of the child. While, naturally, this court holds sympathy for the parties who will be affected by the incarceration of this young man in the State Penitentiary, we can hold no sympathy toward the act which was committed. As stated in Cluck v. State, supra [9 Okla. Cr. 580, 132 P. 932]:

"There was no blacker and more deadly treachery in the heart of Judas Iscariot when he betrayed the Savior of mankind with a kiss than there is in the heart of the seducer, when in the sacred name of love he violates the body and crushes the soul of his unfortunate and trusting victim, merely to gratify his base animal passion."

While the corroboration in this case is not what might be termed as overwhelming, it is sufficient to require the

406

case to be submitted to the jury for their consideration. There is a clear conflict in the evidence, but it is a well-settled rule of this court that the jury is exclusive judge of the weight of the evidence. The defendant was ably represented and the record discloses that his counsel have not overlooked any point which might benefit his cause. A jury of local citizens who heard the evidence has spoken. No claim of passion or prejudice is presented or shown and the verdict should not be disturbed.

The judgment of the district court of Garvin county is accordingly affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.